IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Angela Nauful, *individually and as Personal Representative of the Estate of Margaret Nauful*,<br><br>                Plaintiff,<br><br>v.<br><br>Navy Federal Credit Union,<br><br>                Defendant. | Case No. 3:23-cv-02357-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 58.]

Plaintiff filed an Amended Complaint on August 2, 2023, asserting claims for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") and for breach of contract. [Doc. 18.] On July 30, 2024, Defendant moved for summary judgment on both of Plaintiff's claims. [Doc. 58.] Plaintiff filed a response on September 5, 2024, and Defendant filed a reply on September 27, 2024. [Docs. 67; 73.] Accordingly, this motion is ripe for review.

## **BACKGROUND**[1]

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*,

---

[1] Pursuant to the undersigned's Rule 56 Summary Judgment Motion Procedures, the parties submitted a joint statement of stipulated material facts [Doc. 59], a movant's statement of material facts [Doc. 60], an opponent's statement of material facts [Doc. 68], and a reply statement of material facts [Doc. 74]. The Court will cite to these documents for the relevant facts included herein.

550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

This action arises out of a series of withdrawals and wire transfers completed by Plaintiff's now-deceased mother, Margaret Nauful ("Mrs. Nauful"), at the direction of scammers. Mrs. Nauful maintained three accounts with Defendant (the "Navy Federal Accounts"), and on December 29, 2020, Plaintiff was added as a joint owner on all of the Navy Federal Accounts. [Doc. 59 ¶¶ 4–5.] Although Plaintiff never personally deposited funds in any of the Navy Federal Accounts, as a joint owner, she had full access to the accounts and was added to assist in paying bills and making transfers. [*Id*. ¶¶ 6, 57–58.]

The contractual agreement between Plaintiff and Defendant is comprised of the Navy Federal Membership Application, Important Disclosures, and MMSA Disclosure Statement (collectively, the "Contract"). [*Id*. ¶ 10.] The Contract contains the following provision:

> We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, reverse, or delay any specific withdrawal, payment, or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigations, including in one or more of the following circumstances.
> . . .
> - We suspect that you may be the victim of a fraud, scam, or financial exploitation, even though you have authorized the transaction(s);
> - We suspect that any transaction may involve illegal activity or may be fraudulent.

[*Id*. ¶ 11 (internal quotation marks omitted).] The Contract also states that "Navy Federal accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended." [*Id*. ¶ 12 (internal quotation marks omitted).]

2

Beginning on March 9, 2022, and over the course of the next three months, Mrs. Nauful made five wire transfers and 17 cash withdrawals from the Navy Federal Accounts, totaling over $500,000.[2] [*Id*. ¶¶ 13, 18–19, 21–30, 33–34, 36, 40–45.] During this period, bank employees commented to each other that Mrs. Nauful's transactions were "'suspicious'" and "'odd,'" and that it could possibly be "'elder abuse.'" [*Id*. ¶ 20; *see also id*. ¶ 48.] Mrs. Nauful repeatedly disclosed that the transfers were for "business transaction[s]" or to "purchase antique furniture." [*Id*. ¶¶ 31, 35, 37, 46 (internal quotation marks omitted).]

After Plaintiff discovered that her mother had been a victim of a scam, Plaintiff requested that Defendant reimburse her the full amount of the wires and cash withdrawals completed by Mrs. Nauful. [*Id*. ¶ 96.] When Defendant declined to voluntarily return the funds, Plaintiff initiated this lawsuit, claiming the total amount of the wire transfer and cash withdrawal transactions, as well as punitive damages, interest, and attorney's fees. [*Id*. ¶¶ 97–98; *see* Doc. 18 at 23.]

## **APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] Two of the wire transfers were returned to Defendant by the receiving banks and credited back to the Navy Federal Accounts. [Doc. 59 ¶¶ 16, 39.]

U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id*. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id*. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id*. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

4

>> (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendant moves for summary judgment on all claims asserted against it. [Docs. 58; 58-1.] Based on the below analysis, the Court grants Defendant's motion.

**Violation of the SCUTPA**

Defendant argues that Plaintiff lacks standing to recover under her SCUTPA claim and that she has failed to forecast evidence creating a genuine factual dispute concerning whether Defendant engaged in deceptive or unfair conduct, whether Plaintiff suffered an ascertainable injury, or whether there was adverse impact on the public interest. [Doc. 58-1 at 14–32.]

*Standing*

Defendant first argues that Plaintiff lacks standing in her individual capacity because she did not suffer losses from the Navy Federal Accounts, as she never deposited funds into the accounts. [Doc. 58-1 at 16–19.]

To have standing to bring a claim under the SCUTPA, a plaintiff must have been the victim of an unfair or deceptive act and must have sustained damages as a result. *See Collins Holding Corp. v. Defibaugh*, 646 S.E.2d 147, 150 (S.C. Ct. App. 2007) ("The [SC]UTPA only creates causes of action in those suffering a loss *as a result of* [an unfair or] deceptive act."). A plaintiff must have "suffered actual, ascertainable damages as a

result of the defendant's use of the unlawful trade practice." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998).

As this Court previously held in its Order denying Defendant's motion to dismiss [Doc. 32 at 4–5],[3] the Contract provides that funds in a jointly owned account are "co-owned equally" by joint owners and that "[n]on-member joint owners are granted ownership rights and access to funds in the designated member account(s) equal to the owner of the account" [Doc. 59-8 at 4–5]. Moreover, Plaintiff has presented evidence that Mrs. Nauful asked Plaintiff to be on the Navy Federal Accounts to assist in paying bills and making transfers, and that Plaintiff was to inherit the funds upon Mrs. Nauful's passing. [Docs. 59 ¶¶ 6, 58; 72-1 ¶ 3.[4]] Accordingly, the Court concludes that Plaintiff, as a joint owner of the account, suffered actual, ascertainable damages as a result of Defendant's alleged unfair trade practices.

Because Plaintiff has standing in her individual capacity to bring a claim under the SCUTPA, the Court need not determine whether she has standing in her representative capacity. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8,

---

[3] Because Defendant argues that there is no evidence that Plaintiff is a joint owner of the account and suffered actual and ascertainable damages [Doc. 58-1 at 17–19], the Court readdresses standing at this stage, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . [i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken to be true." (internal quotation marks omitted)).

[4] Defendant objects to Plaintiff's declaration as untimely. [Doc. 74 at 5–6.] The Court in its discretion will consider the facts included in Plaintiff's declaration [Doc. 72-1] as part of the Opponent's Statement of Material Facts, particularly where the declaration is cited in Plaintiff's response in opposition to the motion for summary judgment [Doc. 67 at 11, 14] and counsel has indicated that the failure to file it initially was an oversight [Doc. 72 at 1].

11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### *SCUTPA Claim*

To establish a violation of the SCUTPA, a "plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *deBondt v. Carlton Motorcars, Inc.*, 536 S.E.2d 399, 407 (S.C. Ct. App. 2000). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition." *Beaumont v. Walter Scotty Branch*, No. 2:23-cv-03546-DCN, 2023 WL 7075101, at *18 (D.S.C. Oct. 26, 2023). "There are two general ways to demonstrate the potential for repetition: (1) by showing the same kind of actions occurred in the past, thus making it likely the actions will continue absent some deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *deBondt*, 536 S.E.2d at 407.

Defendant argues that it did not engage in unfair conduct[5] because a jury could not conclude that it was "immoral, unethical, or oppressive" or in violation of public policy for Defendant to allow Mrs. Nauful access to the funds in the Navy Federal Accounts, and Plaintiff could have avoided her alleged injury by monitoring the accounts. [Doc. 58-1 at

---

[5] Plaintiff does not assert that Defendant engaged in any deceptive conduct that would be actionable under the SCUTPA. [Doc. 59 ¶ 107.]

19–28.] Defendant also argues that Plaintiff cannot demonstrate ascertainable injury because none of the funds belonged to her and that there is no adverse impact on the public interest because Plaintiff has failed to produce evidence that Defendant's alleged conduct is likely to adversely affect anyone other than the parties involved in this litigation. [*Id*. at 28–32.]   In response, Plaintiff argues that fairness is a factual inquiry for the jury, that Plaintiff's ability to avoid her injuries is irrelevant outside of tort law, and that a jury could find impact on the public interest because the evidence demonstrates the existence of repetition.  [Doc. 67 at 16–20.]   Plaintiff further argues that SCUTPA claims do not depend on the existence of a common law duty or a private cause of action in another statute, but rather on whether Defendant's conduct harmed the Plaintiff and is "offensive to public policy," which a reasonable jury could find here.  [*Id*. at 18–19.]

The first question is whether Defendant's actions constituted "unfair acts" under the SCUTPA.  Defendant argues that its employee's actions could not have been "immoral, unethical, or oppressive" because Mrs. Nauful personally directed each of the wires and cash withdrawals and lied about their purposes, and that it is not the law nor the public policy in South Carolina to "require[] a financial institution to deny a lucid, independent senior citizen access to her own funds."  [Doc. 58-1 at 21–27.]  The Court agrees.  Moreover, Plaintiff has not pointed the Court to any case law—and the Court finds none—establishing that a business's failure to refuse its customer's directions when the business suspects doing so might better serve the customer's interests amounts to an unfair trade practice.  Accordingly, the Court concludes that no reasonable jury could find that Defendant's conduct in allowing Mrs. Nauful to withdraw funds as she directed

8

is "immoral, unethical, or oppressive" or in violation of public policy, and therefore cannot constitute unfair practices under the SCUTPA.

Moreover, even if a jury could find that Defendant's conduct was unfair under the SCUTPA, there is no genuine issue of material fact as to whether Defendant's conduct affected the public interest.  *See Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004) ("An impact on the public interest may be shown if the acts or practices have the potential for repetition.  The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.").  Here, Plaintiff has provided no evidence that Defendant engaged in similar conduct in the past with respect to other customers, and instead relies only on Defendant's interactions with Mrs. Nauful.  *See Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013) ("[C]onduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." (internal quotation marks omitted)).  Further, Plaintiff has produced no evidence that Defendant's employees acted in accordance with Defendant's policies and procedures such that the procedures themselves created a potential for repetition.  *See Skywaves I Corp. v. Branch Banking & Trust Co.*, 814 S.E.2d 643, 655–56 (S.C. 2018) (granting summary judgment on SCUTPA claim when the plaintiff failed to provide evidence that the defendant's institutional procedures created a potential for repetition of unfair and deceptive acts). Accordingly, the Court grants summary judgment to Defendant on Plaintiff's SCUTPA claim.

**Breach of Contract**

Defendant also argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Defendant did not have a contractual obligation to prevent Mrs. Nauful from withdrawing funds and because there is no implied covenant of good faith and fair dealing to detect fraud and prevent elder abuse. [Doc. 58-1 at 32–38.] Defendant first asserts that the provision of the Contract Plaintiff relies on for creating a duty—giving Defendant the right to refuse a member's instructions if it suspects she is a victim of a fraud, scam, or financial exploitation—is permissive and does not impose an express obligation on Defendant. [*Id*. at 34–35; *see* Doc. 59 ¶ 11 ("We may decline or prevent any or all transactions to or from your account . . . [if] [w]e suspect that you may be the victim of a fraud, scam, or financial exploitation, even though you have authorized the transaction(s).").] Defendant further argues that under Virginia law,[6] the implied covenant

---

[6] South Carolina courts routinely enforce choice-of-law provisions and will honor such a provision if "the parties to a contract specify the law under which the contract shall be governed." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). Here, the Contract's "Governing Laws and Liability" provision states that "Navy Federal accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended. Property may be transferred to the appropriate state if there has been no activity on any of your accounts within the time period specified by state law." [Doc. 58 at 6.] The Court is unconvinced that this language alone is sufficient to require that Virginia law be applied, *see* 17A Am. Jur. 2d Contracts § 255 ("A 'choice of law' provision in a contract names a particular state and provides that the substantial laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated."), but notes that the intention of the parties in the Contract seems to be that Virginia law should apply, *see S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302 (S.C. 2001) ("[T]he paramount rule of contract construction is to ascertain and give effect to the intent of the parties as determined from the whole document." (internal quotation marks omitted)). Both parties agree that the result is the same under either Virginia or South Carolina law, albeit arguing for different results. [*See* Docs. 58-1 at 33 n.9; 67 at 20 n.5.] Assuming but not deciding that Virginia law applies, and for ease of reference, the Court will cite to Virginia law only.

10

of good faith and fair dealing cannot impose obligations that do not exist under the contract. [*Id*. at 35–38.] Finally, Defendant argues that even if Defendant owed Plaintiff an express or implied duty, Plaintiff cannot show breach or causation because there is no evidence that Defendant acted in bad faith and because it was the conduct of the third-party scammers that caused the losses to Plaintiff, not the conduct of Defendant. [*Id*. at 38–39.]

In response, Plaintiff does not argue that the Contract creates an express duty but instead argues only that the implied covenant of good faith and fair dealing prevents a party from exercising contractual discretion in bad faith. [Doc. 67 at 20–22.] Plaintiff asserts that the Contract gave Defendant broad discretion to suspend account activity in the event of suspected fraud and that Defendant failed to exercise that discretion reasonably, thereby violating the implied covenant. [*Id*.]

In reply, Defendant contends that "the Court need not even reach the question of how contractual discretion was exercised" because "Plaintiff invokes the implied covenant of good faith to create a duty where one does not exist in the contract." [Doc. 73 at 17.] The Court agrees.

To establish a claim for breach of contract, a plaintiff must demonstrate "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). The implied covenant of good faith and fair dealing exists to protect a party's right "to receive the benefits of the agreement." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 611 (4th Cir. 2021) (internal quotation marks omitted). "[A]n implied covenant of good faith and fair

11

dealing . . . does not bind the parties where no contractual duty is imposed." *Tandberg, Inc. v. Advanced Media Design, Inc.*, No. 1:09cv863, 2010 WL 11569540 , at *3 (E.D. Va. Jan. 26, 2010).  "[A]lthough the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.- Conn.*, 156 F.3d 535, 542 (4th Cir. 1998).

Here, the Contract grants Defendant permission to deviate from its baseline obligation to complete transactions in accordance with its members' requests and allows Defendant to decline transactions if it suspects that the member is a victim of fraud, scam, or financial exploitation.  [Doc. 59 ¶ 11.]  It does not, however, create a duty or require Defendant to exercise its discretion to prevent fraud, but merely gives Defendant permission to decline or prevent transactions if such fraud is detected.  Because Defendant did not choose to decline or prevent Mrs. Nauful's transactions in this case—as was its right under the Contract—any implied covenant to exercise reasonable discretion in preventing the transactions did not apply.  *See Va. Vermiculite*, 156 F.3d at 541–42 ("[T]he duty of good faith does not prevent a party from exercising its explicit contractual *rights*."); *see also Wilkins v. United States*, No. 2:15cv566, 2016 WL 2689042, at *4 (E.D. Va. May 9, 2016) (dismissing good faith and fair dealing claim where allegations were within the defendant's contractual rights).  Accordingly, finding no contractual obligation to prevent Mrs. Nauful's transactions, the Court grants summary judgment to Defendant on Plaintiff's breach of contract claim.[7]

---

[7] Because the Court grants summary judgment as to each of Plaintiff's claims, the Court need not address whether Plaintiff's claims regarding Mrs. Nauful's wire transfers are preempted by the Uniform Commercial Code as argued by Defendant.

12

## **CONCLUSION**

For these reasons, Defendant's motion for summary judgment [Doc. 58] is GRANTED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

July 3, 2025
Columbia, South Carolina